## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN M. CONWAY,

       Plaintiff,

                                      Case No. 13-11164

   v.                             Hon. Terrence G. Berg

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

       Defendant.

_____/

### ORDER DENYING PLAINTIFF'S MOTION (DKT. 14), AND
### GRANTING DEFENDANT'S MOTION (DKT. 13)
### FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

      This is an ERISA action for the recovery of benefits under an Employee Benefit Plan. Plaintiff John Conway is seeking to overturn the decision of Defendant Reliance Standard Life Insurance Company ("Reliance"), which denied him disability benefits.

      On December 13, 2013, Plaintiff filed a motion for judgment on the administrative record (Dkt. 14), claiming that because he submitted sufficient proof of disability, Defendant's denial was improper. That same day, Defendant filed its own motion for judgment (Dkt. 13), maintaining that Plaintiff's proof was insufficient and that Defendant's decision to deny benefits should be upheld.

      For the reasons set forth below, Defendant's Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**.

## I.    FACTS

For the past twenty-seven years, Plaintiff John Conway has practiced as a personal injury defense attorney for the law firm of Ogne, Alberts & Stuart, PC ("Ogne") (Dkt. 6, R. at 143).  Roughly five years ago, on November 9, 2009, Plaintiff suddenly lost hearing in his left ear.  *Id*. at 140.  Though Plaintiff returned to work three days later—and has continued to work as an attorney ever since—his hearing loss has required him to reduce the number of hours he works per week.  *Id*. at 140, 149, 300.  Before losing his hearing, Plaintiff typically worked seventy hours per week; now Plaintiff is only able to work fifty hours per week.  *Id*.

Following the loss of his hearing, Plaintiff visited two otolaryngologists.  *Id*. at 146-47.  On November 10, 2009—the day after his hearing loss—Plaintiff saw Dr. Stachler, a close friend of his, who diagnosed him with sudden acute sensorineural hearing loss.[1]  *Id*. at 318-19.  Nine days later, Plaintiff saw Dr. Zappia who confirmed Dr. Stachler's diagnosis and added that Plaintiff seemed to be experiencing some tinnitus (ringing in his ears) and loss of balance.  *Id*. at 320.

On December 9, 2009, Plaintiff submitted a claim for disability benefits to Defendant Reliance.  *Id*. at 140.  The claim was made under a policy of insurance that Ogne had obtained from Reliance approximately six months prior to Plaintiff's hearing loss, for the purpose of insuring Ogne's long term disability plan ("the Plan").  *Id*. at 1.  To obtain benefits, the Plan requires a claimant to submit

---

[1] Sudden acute sensorineural hearing loss, also known as sudden deafness, is "deafness due to a lesion in the sensory mechanism (cochlea) of the ear or to a lesion in the in the acoustic nerve of the central neural pathways or to a combination of such lesions."  Richard Sloane, THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 182 (1987).

2

satisfactory proof of total disability. *Id*. at 19. Under the terms of the Plan, total disability means the inability to perform the material duties of the claimant's regular occupation.[2] *Id*. at 12.

On March 9, 2010, after reviewing the reports of Dr. Zappia and Dr. Stachler, Defendant denied Plaintiff's claim. *Id*. at 119. Defendant concluded that Plaintiff had not provided evidence sufficient to establish that he was unable to perform the material duties of his position as an attorney. *Id*. at 119-21.

On February 10, 2012, Plaintiff appealed Defendant's decision, relying on the previous findings of Dr. Stachler and Dr. Zappia. *Id*. at 332-36. In response to Plaintiff's appeal, Defendant requested additional medical records and conducted an independent review of Plaintiff's claim. *Id*. at 134-38. The additional medical records included the reports of Dr. Baxter, a psychiatrist whom Plaintiff saw on May 21, 2012 and May 23, 2012. *Id*. at 518-19. Dr. Baxter found Plaintiff's hearing loss was not psychological, though he did find that Plaintiff was anxious about the impact his loss of hearing was having on his work and family. *Id*. at 519. Defendant's independent review consisted of their otolaryngologist, Dr. Carpenter,

---

[2] "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
    (1) During the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;
        (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a fully-time basis. An Insured who is Partially Disabled will be considered Totally Disabled.
        (b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and
    (2) After a Monthly benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on the Full-time basis.
(Dkt. 6, R. at 12).

reviewing the findings of Dr. Stachler and Dr. Zappia, as well as their psychiatrist, Dr. Acenas, reviewing the findings of Dr. Baxter. *Id*. at 134-38. Dr. Carpenter concluded that, though Plaintiff suffered from sudden hearing loss in his left ear and experienced ringing in his ears and loss of balance as a result, these conditions did not affect his work capacity. *Id*. at 135. Similarly, Dr. Acenas concluded that though Plaintiff was anxious, his anxiety was "non-impairing." *Id*. at 526. For these reasons, on September 21, 2012, Defendant denied Plaintiff's appeal. *Id*. at 134.

In response to that denial, Plaintiff filed suit under ERISA. The matter is now before the Court on the parties' cross motions for judgment. Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be determined based on the parties' briefs and the administrative record.

## II.        STANDARD OF REVIEW

Generally, an ERISA plan administrator's decision to deny benefits is reviewed *de novo*. *Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 115 (1989). But if a benefit plan grants discretionary authority to the plan administrator, the court reviews the decision to deny benefits under an arbitrary and capricious standard. *Id*. The Sixth Circuit has interpreted the language used in the Plan at issue here, "submit satisfactory proof of total disability to us," as clearly granting the plan administrator discretion to determine eligibility for benefits; therefore the arbitrary and capricious standard of review would be expected to apply. *Yeager v. Reliance Standard Life Insurance Co*., 88 F.3d 376, 380 (6th Cir. 1996). However, in

4

2007, Michigan banned the use of discretionary clauses in insurance policies.  *See*
Mich. Admin. Code r. 500.2202(b).  As a result, discretionary clauses contained in
plans issued in Michigan after June 1, 2007 are void, and the *de novo* standard of
review applies to ERISA lawsuits arising under such plans.  *See generally Am.
Council of Life Insurers v. Ross*, 558 F.3d 600, 609 (6th Cir. 2009) (holding Michigan
law banning discretionary clauses in insurance policies is not preempted by ERISA).

The Plan at issue in this case came into effect in 2009, and the parties agree
that the appropriate standard of review is *de novo*.  Under a *de novo* review, "the
role of the court reviewing a denial of benefits is to determine whether the plan
administrator made the correct decision."  *Hoover v. Provident Life and Acc. Ins.*,
290 F. 3d 801, 808 (6th Cir. 2002) (internal quotations omitted).  First, the Court
must decide whether the administrator properly interpreted the Plan.  *Id.* at 809.
Applying general principles of contract law, the Court must read the Plan
provisions "according to their plain meaning in an ordinary and popular sense" and
construe any ambiguities in the Plan against the drafter.  *Williams v. Int'l Paper
Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  Second, relying only on the record before the
plan administrator at the time of its decision, the Court must decide whether the
insured was entitled to benefits under the proper interpretation of the Plan
provisions.  *Hoover*, 290 F.3d at 809.  Finally, because the review is *de novo*, the
Court does not need to consider Defendant's potential conflict of interest.  *See Metro.
Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008) (finding that a reviewing court should
consider a conflict of interest as a factor when determining whether a plan

administrator abused its discretion in denying benefits); *see also Am. Council of Life Insurers*, 558 F.3d at 609 (finding Michigan's ban of discretionary clauses eliminates potential conflicts of interest).

## III.     ANALYSIS

According to the Plan, an insured employee is eligible to receive long term disability benefits if he "(1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy; (2) is under the regular care of a Physician; (3) has completed the Elimination Period; and (4) submits satisfactory proof of Total Disability." Dkt. 6, R. at 19. Generally, an insured employee is totally disabled when, as a result of an injury or sickness, the employee "cannot perform the material duties of his/her Regular Occupation." *Id*. at 12. But significantly, this definition includes both those who are "partially disabled," defined as being able to perform "the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis," and those who are "residually disabled," defined as being able to perform some of the material duties "during the Elimination Period." *Id*. Under the terms of the Plan, the elimination period is defined as "90 consecutive days of Total Disability." *Id*. at 11.

Defendant contends that the term total disability means complete inability to work during the elimination period. However, the Plan's equation of partial disability and residual disability with total disability contradicts that interpretation. *See Hoff v. Reliance Standard Life Ins. Co.*, 160 F. App'x 652, 654 (9th Cir. 2005) (finding that an ERISA plan that equated the definition of residual

6

disability with that of total disability contradicted an interpretation requiring complete inability to work).  As noted above, the Plan defines partial disability as the ability to perform all of the material duties of an occupation on a part-time basis or some of the material duties on a full-time basis.  Dkt. 6, R. at 12.  The Plan states, "An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period."  *Id.*  Yet, the Plan also defines residual disability as "being Partially Disabled during the Elimination Period," and indicates, "Residual Disability will be considered Total Disability."  *Id.*  When these provisions are construed as a whole, Plaintiff need only show that he was only able to perform some of the material duties of his regular occupation on a full-time basis (or all of the material duties of his regular occupation, but on a part-time basis) throughout the elimination period.  *Id.*  In other words, Plaintiff must show that he was at least unable to perform some of the material duties of his regular occupation between November 9, 2009, when Plaintiff claims his disability began, and February 7, 2010, ninety days later.  *Id.* at 140.

The parties also dispute the meaning of the term "regular occupation."  *Id.* at 11-12.  Under the Plan's definition of regular occupation, the insured employee's occupation will be considered "as it is normally performed in the national economy," disregarding "the unique duties performed for a specific employer or a specific locale."  *Id.* at 11.  Defendant relies on the Department of Labor's Dictionary of Occupational Titles ("DOT") to define the material duties of Plaintiff's occupation as it is performed in the national economy.  Plaintiff argues that Defendant's use of the

7

DOT to give meaning to the term "regular occupation" is unreasonable and inconsistent with the Plan's provisions, but the Sixth Circuit Court has found the use of the DOT to be rational even when a plan does not specifically state that the occupation would be considered on a national scale. *Osborne v. Hartford Life and Acc. Ins.*, 465 F.3d 296, 299 (6th Cir. 2006) ("The word 'occupation' is sufficiently general and flexible to justify determining a particular employee's 'occupation' in light of the position descriptions in [the DOT] rather than examining in detail the specific duties the employee performed.").

Further, the use of the DOT to define the material duties of Plaintiff's regular occupation is appropriate because the duties that the DOT enumerates are not substantially different from those that Plaintiff actually performed. Courts have held that for an insurer to use a general job description to define the material duties of an occupation, it must involve comparable duties but not necessarily every duty of the claimant's actual occupation. *See, e.g.*, *Gallagher v. Reliance Standard Life Ins.,* 305 F.3d 264, 272 (4th Cir. 2002). The DOT defines the duties of an attorney as gathering evidence, researching and interviewing clients, preparing briefs, arguments and testimony, filing briefs, representing clients in court, and interpreting laws, rules, and regulations. Dkt. 6, R. at 313. The only noteworthy difference between the duties that the DOT enumerates and those that Plaintiff described is that the former did not include a travel requirement. *Id.* Plaintiff claims his actual job—where he still currently works—requires him to travel to all counties in both Michigan and Ohio. *Id.* at 148. Even so, there is evidence in the

8

administrative record that, despite Plaintiff's loss of hearing in his left ear, he is still able to travel. *Id*. at 347. For that reason, the distinction between the DOT's description of duties and Plaintiff's actual duties is immaterial. Simply put, while the law clearly allows reference to the DOT standards, even if Plaintiff's actual duties are used to define his regular occupation, the record shows that he is capable of performing those duties.

Finally, the parties take different positions on the question of what the Plan requires by the term "satisfactory proof." *Id*. at 19. Defendant argues that satisfactory proof requires objective medical evidence of disability. But the Plan itself does not define satisfactory proof nor specifically require proof of disability by objective medical evidence. *Id*. at 1-33. The Fourth Circuit has interpreted the meaning of the term satisfactory proof not to require objective medical evidence per se, but rather proof that is "objectively satisfactory." *See, e.g.*, *Gallagher,* 305 F.3d at 270. Where a plan does not explicitly limit proof to objective medical evidence, courts have also considered subjective evidence, including the insured's self-reported evidence. *See, e.g.*, *James v. Liberty Life Assurance Co. of Boston*, No. 12 - 1361, 2013 WL 5740875, at *9 (W.D. Mich. 2013). In making its determination as to whether the proof is objectively satisfactory, the Court will nevertheless give evidence weight "in accordance with the supporting medical tests and objective findings that underlie it." *Crider v. Highmark Life Ins. Co.*, 458 F. Supp. 2d 487, 505 (W.D. Mich. 2006) (holding a treating physician's opinion that was unsupported by objective medical findings was not entitled to significant weight).

Considering the plan provisions, and all of the evidence in the administrative record, the Court concludes that Plaintiff did not provide satisfactory proof of Total Disability. Though there is medical evidence showing that Plaintiff has experienced significant hearing loss, a loss of balance, and tinnitus, the record does not show by objectively satisfactory evidence that these conditions rendered Plaintiff unable to perform any of the material duties of his occupation as an attorney.

Indeed, the reports of Plaintiff's treating physicians provide objective evidence of a total loss of hearing in Plaintiff's left ear only. Dkt.6, R. at 320-322 and 317-319. Plaintiff has not suffered a complete loss of hearing. In fact, when examining Plaintiff's overall hearing, Dr. Zappia found Plaintiff was "able to hear a whispered voice" (*Id*. at 322), and Dr. Zappia eventually characterized Plaintiff's loss of hearing as "a moderate distraction." *Id*. at 331. Additionally, Plaintiff's physicians' reports do provide objective evidence of an initial loss of balance. *Id*. at 320-322. However, there is also evidence that this has continuously improved. *Id*. at 319, 320, 331, and 447. Lastly, these reports do provide subjective evidence of tinnitus and lack of concentration. *Id*. at 512. However, with regard to Plaintiff's inability to concentrate, Dr. Zappia, Plaintiff's treating otolaryngologist, found that Plaintiff was "generally alert and oriented" (*Id*. at 322) and noted that Plaintiff's tinnitus could be limiting to him, but was "variably intense." *Id*. at 331. Likewise, Dr. Baxter, Plaintiff's treating psychiatrist, concluded that Plaintiff was anxious, but made no conclusions about his ability to concentrate. *Id*. at 504. Furthermore,

10

there is evidence that Plaintiff's claimed inability to concentrate also improved. *Id*. at 319.

In addition to the reports of Plaintiff's treating physicians, the administrative record contains the reports of Defendant's doctors. *Id*. at 511-26. Though these doctors did not treat Plaintiff, their opinions are not necessarily given less weight. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003) (finding the "treating physician rule," under which the opinion of treating physicians is entitled to more weight than that of non-treaters, is not applicable to medical evidence in ERISA cases). Dr. Carpenter, reviewing Plaintiff's loss of hearing, tinnitus, and loss of balance, concluded there were *no* functional restrictions or limitations on his ability to work. Dkt. 6, R. at 512-15. Similarly, Dr. Acenas, reviewing Plaintiff's inability to concentrate, concluded that "the information does not support psychiatric impairment" and that Plaintiff's diagnosis of anxiety is "non-impairing." *Id*. at 524-27.

Having reviewed the evidence in the record, it is clear that Plaintiff has not provided objectively sufficient evidence that he is unable to perform the material duties of an attorney. As noted above, the DOT defines the primary tasks of an attorney as gathering evidence, researching and interviewing clients, preparing briefs, arguments and testimony, filing briefs, representing clients in court, and interpreting laws, rules, and regulations. Dkt. 6, R. at 313. The DOT also notes that an attorney's responsibilities may include conferring with colleagues, acting as a trustee, guardian or executor, drafting wills, trusts, transfer of assets, gifts and

11

other documents, advising corporate clients, supervising and coordinating activities of subordinate legal personnel, preparing contracts, paying taxes, settling labor disputes, teaching college courses in law, or specializing in a specific phase of law. *Id*. Of all these tasks, Plaintiff only claims that he is unable to represent clients in court. *Id.* at 336. Plaintiff argues that "many courtrooms are set up such that [Plaintiff] cannot hear the witness or opposing counsel and [Plaintiff] is now off balance when walking in a confined space." *Id.* at 336.

Despite Plaintiff's claims, the weight of the medical evidence supports the finding that Plaintiff is able to represent clients in court. Though Plaintiff may have more trouble hearing witnesses and opposing counsel than he did prior to his hearing loss, as noted above Plaintiff can hear even a whispered voice. *Id.* at 322. And while Plaintiff may have had trouble balancing when walking in a confined space when he first lost his hearing, his balance has continuously improved. *Id.* at 319, 320, 331, and 447. Further, there is no evidence in the record that Plaintiff is unable to perform any of the other material duties of an attorney. Though Plaintiff indicates that tinnitus has affected his ability to concentrate, Plaintiff reported experiencing mild bilateral tinnitus *prior* to losing hearing in his left ear. *Id.* at 320. And Plaintiff did not file any disability claims or otherwise claim he was unable to work at that time. Significantly, the records also show that Plaintiff returned to work three days after he first lost his hearing (*Id.* at 140) and that Plaintiff is presently working fifty hours per week as a personal injury defense attorney. *Id.* at 292. This contradicts the assertion that Plaintiff is only able to

12

perform the material duties of an attorney on a part-time basis, as the Plan itself defines "Full-time" to mean working a minimum of thirty hours during a regular work week. *Id.* at 11. In short, the proofs offered do not demonstrate that Plaintiff's physical limitations significantly impact his ability to perform the material duties of an attorney.

Apart from long-term disability benefits, Plaintiff claims Defendant also improperly denied him specific indemnity benefits. Under the terms of the Plan, an insured is eligible to receive specific indemnity benefits if the insured "suffers any one of the Losses listed . . . from an accident resulting in an Injury." *Id.* at 26. The list does include "hearing in one ear." *Id.* For that reason, Plaintiff reads this provision as a *per se* benefit, arguing that specific indemnity benefits should be awarded to Plaintiff unquestionably because he suffered an enumerated loss. Yet, the Plan clearly notes that the loss must result in an "Injury," which, according to its definition, "must cause Total Disability." *Id.* at 12. As the Court reads these provisions, Plaintiff is only eligible to receive specific indemnity benefits if he is also eligible to receive long term disability benefits. Because Plaintiff did not provide sufficient proof of Total Disability, and thus is not eligible to receive long term disability benefits, he is not eligible to receive specific indemnity benefits.

In addition to an award of disability benefits, Plaintiff's complaint requests the equitable remedy of disgorgement. Specifically, Plaintiff alleges that by improperly denying his claim for disability benefits, Defendant breached its fiduciary duty. On that basis, Plaintiff requests that the Court order Defendant to

disgorge all profits improperly gained as a result of that breach.  However, because the Court has determined that Defendant did not improperly deny Plaintiff's claim for disability benefits, Defendant could not have breached its fiduciary duty.  For that reason, disgorgement is not appropriate in this case.[3]

Finally, in addition to Plaintiff's ERISA claim, Plaintiff's complaint contains a breach of contract claim.  However, ERISA preempts "virtually all state law claims relating to an employee benefit plan." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1271, 1276 (6th Cir. 1991); *see also* 29 U.S.C. § 1144(a).  A claim is preempted if, in effect, it seeks to recover an ERISA plan benefit.  *Cromwell*, 944 F.2d at 1276.  Plaintiff's breach of contract claim expressly seeks to recover "contractually agreed upon benefits."  Accordingly, that claim is within the scope of ERISA's exclusive regulation.  Therefore, the breach of contract claim is preempted and must be DISMISSED.

## IV.      CONCLUSION

Therefore, for the reasons stated above, Defendant's Motion for Judgment (Dkt. 13) is **GRANTED**, and Plaintiff's Motion for Judgment (Dkt. 14) is **DENIED**.

**SO ORDERED.**

Dated:  July 28, 2014                          s/Terrence G. Berg
                                               TERRENCE G. BERG
                                               UNITED STATES DISTRICT JUDGE

---

[3] Furthermore, Plaintiff's disgorgement argument relies on *Rochow v. Life Ins. Co. of North America*, 737 F.3d 415 (6th Cir. 2013) (finding an award of disgorged profits in addition to an award of benefits due under the insurance policy in an ERISA case was proper), an opinion which was recently vacated by the Sixth Circuit and for which a rehearing *en banc* was granted.  *See* 2014 U.S. App. LEXIS 3158 (6th Cir. Feb. 19, 2014).

14

**Certificate of Service**

  I hereby certify that this Order was electronically submitted on July 28, 2014, using the CM/ECF system, which will send notification to the parties.

            s/A. Chubb        
            Case Manager